IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TODD A. D'ANTONI,

    Plaintiff,

v.

UNITED STATES OF AMERICA

OPINION and ORDER

16-cv-398-wmc
90-cr-92-wmc

    In 1991, Todd D'Antoni was sentenced under the mandatory sentencing Guidelines as a career offender. Now before the court is his second petition under 28 U.S.C. § 2255, which the Seventh Circuit authorized based on the United States Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). (*See* dkt. #2.) This matter was stayed pending the Supreme Court's decision in *Beckles v. United States*, 137 S. Ct. 886 (2017). After the *Beckles* decision was issued in March of 2017, the parties completed their briefing and the court held an oral argument on May 11, 2017.

    The government opposes D'Antoni's petition on four grounds, the first three of which are procedural. First, the government asserts the petition is an inappropriate successive petition under 28 U.S.C. § 2244(b)(1). Second, it claims that D'Antoni procedurally defaulted his claim. Third, it argues that *Johnson* is not to be applied retroactively to mandatory or advisory Guidelines cases, making D'Antoni's claim untimely. Finally and fourth, the government maintains that D'Antoni's claim fails on the merits because: (a) *Beckles* and Seventh Circuit precedent bar relief; and (b) his conviction for conspiring to kill a government witness qualifies as a predicate offense under the

1

Guideline application notes. After considering the parties' briefing, letters and arguments, the court will deny D'Antoni's petition on the merits and grant him a certificate of appealability.

## RELEVANT BACKGROUND

- **February 1991:** A jury convicted D'Antoni of conspiracy to distribute LSD at the Oxford Correctional Institution while he was serving a 40-year federal sentence for cocaine-dealing and conspiring to kill a government witness.

- **April 1991:** District Court Judge John C. Shabaz sentenced D'Antoni as a career offender to 22 years (264 months) in prison, to be served consecutive to his preexisting federal sentences. The statutory maximum was 30 years, and the applicable mandatory guideline range was 262 to 327 months. D'Antoni was sentenced prior to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005). As such, his sentence was the product of the mandatory Guidelines.

   D'Antoni's career offender status was based on two 1987 federal felony convictions: (1) a conviction for delivering cocaine to a person under the age of 21, which qualified as a controlled-substance conviction under USSG § 4B1.2(b); and (2) a conviction for conspiring to kill a government witness, which in 1991, was a listed offense in Application Note 1 to USSG § 4B1.2(a)(2).

- **October 2010:** D'Antoni filed a *pro se* motion under § 2255, arguing that his career-offender sentence was unlawful because it did not include advance notice of the underlying prior convictions. This court denied that motion as untimely in 2012, and the Seventh Circuit denied D'Antoni's requests for a certificate of appealability and petition for rehearing in 2013.

- **June 26, 2015:** The Supreme Court issued *Johnson v. United States*, 135 S. Ct. 2251 (2015), concluding that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague.

- **April 18, 2016:** The Supreme Court held that "*Johnson* announced a substantive rule that has retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1264-68 (2016).

- **June 10, 2016:** D'Antoni received permission from the Seventh Circuit to proceed on a successive § 2255 petition, in which he argues that: (1) the residual clause of U.S.S.G. § 4B1.2, which includes identical language to the residual clause of the ACCA, is unconstitutional; and (2) his conviction for conspiracy to kill a government witness no longer qualifies as a predicate offense because it falls under the residual clause and the application note is invalid. The court stayed this matter on June 30, 2016.

- **August 29, 2016:** The government conceded and the Seventh Circuit agreed that *Johnson* applies to the advisory Guidelines, and the court held that the residual clause was unconstitutionally vague. *United States v. Hurlburt*, 835 F.3d 715, 719-25 (7th Cir. 2016) (en banc).

- **March 6, 2017:** The Supreme Court issued *Beckles v. United States,* 137 S. Ct. 886, 888, 892 (2017), holding that the advisory Guidelines' residual clause remains valid after *Johnson* because the advisory Guidelines, unlike the ACCA, "do not fix the permissible range of sentences," so the advisory Guidelines sentences "are not subject to a vagueness challenge under the Due Process Clause." The impact of *Johnson* on defendants sentenced before *Booker* was not before the Supreme Court.

- **March 14, 2017:** The parties moved to reopen this matter.

OPINION

The court first will resolve the government's three procedural arguments and then will turn to its merits-based arguments.

I. Procedural Issues

A. Successive Petition Under 28 U.S.C. § 2244(b)(1)

First the government argues that D'Antoni's petition is barred by 28 U.S.C. § 2244(b)(1), which requires dismissal of a "claim presented in a second or successive habeas corpus application . . . that was presented in a prior application." While the

government points to the Seventh Circuit's reasoning that "new legal arguments about the same events do not amount to a new claim," *Brannigan v. United States*, 249 F.3d 584, 587 (7th Cir. 2001), it concedes that the Seventh Circuit has since permitted successive § 2255 petitions, like D'Antoni's, to proceed on a *Johnson*-type claim despite having presented an earlier petition that challenged his career offender status. In *Price v. United States*, 795 F.3d 731, 733 (7th Cir. 2015), the Seventh Circuit construed a "claim" for purposes of § 2244(b)(1) to be a *specific* legal argument, commenting that even though the petitioner raised a "related" argument, he "never alleged [in his first collateral attack that the] ACCA's residual clause itself was unconstitutionally vague." *Id.* While *Price* was decided in the context of a challenge under the ACCA and not the Guidelines, the same principal applies here.

D'Antoni did previously challenge his career offender classification, but he did not present a *Johnson*-type argument. Rather, he argued a lack of proper notice of the underlying conviction. His legal argument here is distinct because it specifically relies on the Supreme Court's recent decision in *Johnson* to buttress his argument that the residual clause of § 4B1.2(a)(2) is unconstitutionally vague. While the government cites two 2016 decisions from this district court, which concluded that similar successive motions were barred by § 2241(b)(1), *Bradley v. United States*, 186 F. Supp. 3d 950, 957 (W.D. Wis. 2016) and *Ross v. United States*, 2016 WL 2642272, at *3 (W.D. Wis. May 6, 2016), neither is binding here. Indeed, to the extent these cases conclude that *any* prior attack to a career offender enhancement bars a subsequent collateral attack premised on a different legal argument,

4

*Price* dictates otherwise. Accordingly, § 2244(b)(1) does not bar D'Antoni from obtaining the relief he seeks.

### B. Procedural Default Doctrine

The same is true for the government's procedural default argument, as it practically concedes. Under this doctrine, a claim "cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal." *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). These claims may not be raised in a motion under § 2255 unless the petitioner shows: (1) both cause and prejudice for the default, or (2) that a "fundamental miscarriage of justice" occurred., often requiring a showing of "actual innocence." *Richardson v. Lemke*, 745 F.3d 258, 272 (7th Cir. 2014).

While the government claims that no such exception applies here, it also necessarily concedes that the Seventh Circuit's decision in *Narvaez v. United States*, 674 F.3d 621 (7th Cir. 2011), substantially weakens this argument. The petitioner in *Narvaez* was challenging a Guidelines enhancement imposed before the Supreme Court's *Begay* and *Chambers* decisions that clarified the definition of "violent felony" under the ACCA. *Id.* at 624. The Seventh Circuit nevertheless held that the miscarriage of justice exception permitted the petitioner to proceed with a § 2255 petition. *Id.* at 630. Specifically, the *Narvaez* court permitted the petitioner to proceed to the merits under a theory of "actual innocence":

> This case therefore involves the classifying of an individual as belonging to a subgroup of defendants, repeat violent offenders, that traditionally has been treated very differently from other offenders. To classify [the defendant] as belonging to this group and therefore to increase, dramatically, the point of

5

departure for his sentence is certainly as serious as the most grievous misinformation that has been the basis of granting habeas relief.

*Id.* More generally, because the *Begay* and *Chambers* decisions were retroactive in that context, and they showed that the petitioner's sentence was an error, the Seventh Circuit held that a fundamental miscarriage of justice had occurred, permitting the petitioner to bring his claim despite procedural default. *Id.*

The government's concession that *Narvaez* complicates its position is an obvious understatement. Indeed, *Narvaez* explicitly addresses D'Antoni's type of petition because: (1) like Narvaez, D'Antoni received a Guidelines sentence and sought to benefit from Supreme Court cases of statutory interpretation; and (2) given that the Guideline range would have been 77-96 months (not 262-327) without the career offender label, D'Antoni's career offender classification significantly impacted his sentence. Based on the Seventh Circuit's reasoning in *Narvaez*, therefore, D'Antoni's § 2255 petition is not barred by procedural default.

### C. *Johnson's* "New Rule"

Finally, unlike the procedural default issue, the Seventh Circuit has not squarely decided the government's next argument, that D'Antoni's claim is barred under § 2255(h)(2) and § 2255(f)(3). To proceed with a second or successive § 2255 motion under § 2255(h)(2), the appropriate court of appeals must certify that a petitioner's request to file a second or successive § 2255 motion contains a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." Similarly, § 2255(f)(3) requires a petitioner to file his collateral attack within

one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively available to cases on collateral review." The Seventh Circuit has not decided either of these issues in this context, and while at least one other court disagrees on this point, it does not appear that either bars D'Antoni's petition.

### 1. Section 2255(h)(2): Requirement of New Rule with Retroactive Effect

In granting D'Antoni's application to proceed with his successive § 2255 motion, the Seventh Circuit did not explicitly certify that his petition contains a new rule with retroactive effect. Instead, it deferred ruling on this issue to this court in the first instance. (*See* Order, dkt. #2, at 2.) In the government's view, *Welch* limits *Johnson's* retroactive application to cases involving ACCA-enhanced sentences only, meaning it has no retroactive effect on D'Antoni's Guidelines sentence.

As petitioner points out, however, the Seventh Circuit's *Narvaez* decision yet again appears to recognize a path for relief. Specifically, in *Narvaez*, the court agreed that the Supreme Court's decisions in *Begay* and *Chambers*, both ACCA cases, applied retroactively to Guidelines sentences. Despite that decision, the government persists in its position that *Johnson* does not apply retroactively to Guidelines sentences since the Supreme Court itself did not squarely state otherwise. D'Antoni's petition is barred. While the government also acknowledges the tension between the *Narvaez* decision and its current position in a footnote, it insists this issue remains open for debate for two reasons: (1) the government's

7

prior concession in *Narvaez* does not preclude its changing positions in this proceeding; and (2) the *Narvaez* decision came from the Seventh Circuit, not the Supreme Court.

While *Narvaez* is certainly not controlling on the Supreme Court, and perhaps not even on another panel of the Seventh Circuit given the government's new posture, that decision obviously binds lower courts in this circuit, at least arguably as does the language of § 2244(b)(3)(C), which § 2255(h) incorporates. Relevant here in particular, § 2244(b)(3)(C) permits the court of appeals to authorize a successive petition "if it determines that the application makes a prima facie showing" that the Supreme Court has made a new rule of constitutional law retroactive. Accordingly, the statutes do not require that D'Antoni *establish* that he was entitled to relief on the merits; his obligation is "simply [to make] a sufficient showing of possible merit to warrant a fuller exploration by the district court." *See Bennett v. United States*, 119 F.3d 468, 469 (7th Cir. 1997).

In that light, § 2255(h)(2) does not appear to bar D'Antoni's new challenge. As explained in greater detail below, and by numerous commentators, the Supreme Court and Seventh Circuit appear to agree that pre-*Booker* sentences bear significant similarities to statutory sentences. *Booker*, 543 U.S. at 234; *Beckles*, 137 S.Ct. at 903 n.4 (Sotomayor, J., concurring); *Hurlburt*, 835 F.3d at 729 n.2 (Judge Hamilton, dissenting); *Hawkins*, 706 F.3d 820, 822 (7th Cir. 2013). Therefore, D'Antoni's arguments are not baseless. To the contrary, the new rule announced in *Johnson* that the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii) was unconstitutionally vague appears sufficiently relevant to D'Antoni's

8

sentence under the same language in the residual clause of the Guidelines to show that his claim has a sufficient basis for consideration on the merits.[1]

## 2. Section 2255(f)(3): Reach of *Johnson* Rule

Even assuming that *Johnson* should be extended retroactively to pre-*Booker* sentences under the Guidelines residual clause, the government further argues that D'Antoni's petition is still untimely since it relies on precedent so far applied by the Supreme Court to ACCA only. Nevertheless, the court disagrees that *Johnson* does not sufficiently announce a new "right" upon which D'Antoni may proceed. In fairness, the Fourth and Sixth Circuit Court of Appeals have accepted the government's position, along with a number of district courts. *See United States v. Brown*, 868 F.3d 297, 301 (4th Cir. 2017); *Raybon v. United States*, 867 F.3d 625, 630 (6th Cir. 2017) (just "[b]ecause it is an open question, it is *not* a 'right'") (emphasis in original); *Davis v. United States*, No. 16-c-747, 2017 WL 3129791, at * (E.D. Wis. July 21, 2017) ("Because the Court has yet to even address the [*Johnson*] claim asserted by Davis, it cannot be said that the right he asserts was 'newly recognized' by the Court."); *United States v. Ojeda*, 2017 WL 1495981 (D. Neb.

---

[1] The Second, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, and D.C. Circuits reached the same conclusion with respect to petitioners who were sentenced under the Guidelines and requested permission to assert an argument under *Johnson* and *Welch*. *See Blow v. United States*, 829 F.3d 170, 172 (2d Cir. 2016); *In re Hubbard*, 825 F.3d 225, 229 (4th Cir. 2016); *In re Holston*, No. 16-50213 (5th Cir. May 17, 2016); *In re Patrick*, 833 F.3d 584, 586 (6th Cir. 2016); *Rusan v. United States*, No. 15-2561 (8th Cir. June 2, 2016); *Williams v. United States*, No. 16-70558, dkt. #13 (9th Cir. June 1, 2016); *In re Encinas*, 821 F.3d 1224 (10th Cir. 2016); *In re Booker*, No. 16-3018, Order (D.C. Cir. June 10, 2016). While these opinions were issued pre-*Beckles*, the decisions are instructive in the sense that each acknowledges the gatekeeping function of § 2255(h)(2).

Apr. 26, 2017) (same); *see also United States v. Russo*, 2017 WL 1533380 (D. Neb. Apr. 27, 2017); *United States v. Rhodes*, 2017 WL 1393743 (W.D. Okla. Apr. 18, 2017), *appeal docketed*, No. 17-6096 (10th Cir. May 1, 2017); *United States v. Hodges*, 2017 WL 1652967 (W.D. Wash. May 2, 2017), *appeal docketed*, No. 17-35408 (9th Cir. May 12, 2017).

Still, each of these decisions relies on the premise that *Johnson* cannot apply to *any* Guidelines sentence in light of the *Beckles* decision, and as the First Circuit Court of Appeals points out in *Moore v. United States*, 871 F.3d 72 (1st Cir. 2017), "What *Beckles* left open . . . was a question of statutory interpretation concerning how mandatory the SRA made the guidelines before *Booker*." *Id*. at 83. On this framing, the right [D'Antoni] seeks to assert is exactly the right recognized by *Johnson*[]."). *Id*. Given that, the court will proceed on the assumption that § 2255(f)(3) does not present a procedural bar to his petition.

## II. Merits of D'Antoni's petition

### A. *Beckles* and Seventh Circuit Precedent

Although the decision in *Beckles* does not squarely resolve the merits of D'Antoni's petition, Seventh Circuit precedent would appear to do so. The government urges this court to adhere in particular to two of the Seventh Circuit's pre-*Hurlburt* decisions. In *United States v. Brierton*, 165 F.3d 1133 (7th Cir. 1999), the court held that the mandatory Guidelines are not subject to vagueness challenges. *Id*. at 1138-39. And in *United States v. Tichenor*, 683 F.3d 358 (7th Cir. 2012), the court extended its conclusion in *Brierton* to bar vagueness challenges to advisory Guidelines sentences. *Id.* at 363-64. Even though the *Hurlburt* decision explicitly overruled *Tichenor* (and by implication *Brierton*), the

government argues these decisions control govern now that *Beckles* has abrogated *Hurlburt*. (Dkt. #10, at 15-16.)

There is some merit, if little certainty, in the government's argument. In *Hurlburt,* the Seventh Circuit explicitly overruled *Tichenor* in light of the Supreme Court's decisions in *Johnson* and *Peugh v. United States*, 133 S. Ct. 2017 (2013). In the *Peugh*, the Supreme Court held that the Guidelines may be challenged under the Ex Post Facto Clause because a "retrospective increase in the Guidelines range … creates a sufficient risk of a higher sentence." *Hurlburt*, 835 F.3d at 724-25 (quoting *Peugh*, 133 S. Ct. at 2084). Relying on *Peugh* in particular, the Seventh Circuit rejected its earlier holding in *Tichenor* that the vagueness doctrine does not affect the Guidelines because they are discretionary. *Id.* In *Beckles*, however, the Supreme Court expressly disapproved of the application of *Peugh's* reasoning to the Advisory Guidelines, explaining that the challenges under the Ex Post Facto Clause and the vagueness doctrine present "analytically distinct" inquiries. *Beckles*, 137 S. Ct. at 895. The vagueness challenge asks whether a statute provides notice and avoids arbitrary enforcement by "clearly specifying the range of penalties available" [because the Guidelines merely impose a "framework" for sentencing]. In contrast, the Court pointed out that an ex post facto challenge asks whether there is a significant risk of a higher sentence. *Id*. At minimum, this distinction undermines the Seventh Circuit's conclusions about *Tichenor* in *Hurlburt*. *See Daniels v. United States*, No. 15-cv-1440, 2017 WL 2623873, at *3 (E.D. Wis. June 16, 2017) ("On the present record and the state of the law, the Court finds that *Hurlburt* has been abrogated on the very issues upon which it

abrogated *Tichenor* and *Brierton*. As a result, those prior cases have been revived, and they require dismissal ...."); *Cross v. United States*, No. 15-cv-1338, 2017 WL 2345592, at 3 (E.D. Wis. May 30, 2017), *appeal docketed*, No. 17-2282 (7th Cir. June 21, 2017) (same).

While this court would appear bound to deny D'Antoni's claim on the merits if *Brierton* is again good law, that is open to reasonable argument. First, the *Beckles* decision includes language that calls the *Brierton* conclusion into question. In particular, Justice Thomas's due process discussion highlighted the distinction between the current Advisory Guidelines, and the Mandatory Guidelines under which D'Antoni and others like him were sentenced. Under the Advisory Guidelines, the *Beckles* Court took notice of the potential for departure after *Booker*, meaning the "due process concerns that ... require notice in a world of mandatory Guidelines no longer apply." 137 S. Ct. at 894 (quoting *Irizarry v. United States*, 553 U.S. 708, 714 (2008)). Justice Sotomayor's concurring opinion took pains to highlight this same distinction:

> The Courts adherence to the formalistic distinction between mandatory and advisory rules at least leaves open the question whether defendants sentenced to terms of imprisonment before our decision in *United States v. Booker*, 543 U.S. 220 (2005) ... that is, during the period in which the Guidelines *did* "fix the permissible range of sentences" ... may mount vagueness attacks on their sentences. That question is not presented by this case and I, like the majority, take no position on its appropriate resolution.

*Beckles*, 137 S. Ct. at 903 n.4.[2]

---

[2] The government might even concede this issue, given that it relied on the same distinction during oral argument:

> The Guidelines do not impose an insuperable barrier that requires a specific finding of fact before the judge can sentence outside the Guidelines. That was the problem with the mandatory Guidelines. Advisory Guidelines allow the judge to look at the

12

Certainly, these comments suggest that a majority of the Justices might yet be persuaded that Mandatory Guidelines present similar, if not identical, notice concerns as the ACCA. Such a conclusion also appears to be consistent with the Court's reasoning in *Booker*:

> At first glance, one might believe that the ability of a district judge to depart from the Guidelines means that she is bound only by the statutory maximum. … Importantly, however, departures are not available in every case, and in fact are unavailable in most. In most cases, as a matter of law, the Commission will have adequately taken all relevant factors into account, and no departure will be legally permissible. In those instances, the judge is bound to impose a sentence within the Guidelines range.

*Booker*, 543 U.S. at 234.

*Dicta* from Seventh Circuit decisions on this issue also appear to support the conclusion that the mandatory Guidelines are subject to vagueness challenges. For one, the Seventh Circuit stated in *Hawkins v. United States*, 706 F.3d 820 (7th Cir. 2013) ("*Hawkins I*"), that the Guidelines "were the practical equivalent of a statute." *Id*. at 822. In *Hawkins*, the court addressed whether a petitioner who was sentenced under the advisory Guidelines could obtain relief under § 2255 to correct a district court's error in calculating the proper sentencing Guidelines range. 706 F.3d at 821. The petitioner's appeal was pending when the Supreme Court issued *Booker*, and he was resentenced as a result. *Id*. at

---

totality of the circumstances and to make policy judgments that may be at variance with the Commission.

(*See* Oral Arg., *Beckles v. United States*, 2016 WL 6947672, at *40-41 (2016).)

822. The court nevertheless denied Hawkins' request for relief. *Id.* In doing so, the Seventh Circuit carefully distinguished its *Narvaez* decision:

> Hawkins refers us to *Narvaez v. United States*, 674 F.3d 621, 629-30 (7th Cir. 2011), which held that a sentence that violated career offender sentencing guideline could be successfully attacked in a postconviction proceeding even though the sentence was shorter than the statutory maximum. But Narvaez, as our opinion emphasized, unlike Hawkins, had been sentenced when the Guidelines were mandatory…. **It was arguable therefore that his sentence exceeded the maximum authorized by "law." Before *Booker* the Guidelines were the practical equivalent of a statute…. Departures were permitted on specified grounds, but in that respect the Guidelines were no different from statutes, which often specify exceptions.**

*Id.* (emphasis added). Following *Peugh*, the Seventh Circuit permitted rehearing, but still denied Hawkins relief. *Hawkins v. United States*, 724 F.3d 915 (7th Cir. 2013) ("*Hawkins II*"). Similar to the *Beckles* decision, the court held that *Peugh* did not warrant relief, in part because ex post facto challenges require a showing of a significant risk of a higher sentence, whereas habeas relief requires a showing of actual prejudice. *Id.* at 917.

Furthermore, even though *Beckles* overruled *Hurlburt* for purposes of advisory Guidelines sentences, the Seventh Circuit's majority and dissenting opinions offer helpful insight. For example, while the Seventh Circuit issued its *en banc* decision in *Hurlburt*, four judges dissented. In Judge Hamilton's dissenting opinion, he added the following footnote:

> Federal prisoners who were sentenced as career offenders based on the residual clause before *Booker*, while the Guidelines were still considered binding, might have a much stronger argument for extending *Johnson* to their sentences. These cases do not present that issue, and I express no views on it.

835 F.3d at 729 n.2. The court's comment in *Hawkins I* that the mandatory Guidelines had the force of law, coupled with the line of reasoning in *Hurlburt*, at least suggest the

14

possibility that the Seventh Circuit's conclusion in *Brierton* that vagueness challenges to pre-*Booker* Guidelines are unavailing may yet be overruled.

While the government does point to certain instances where sentencing judges were permitted to deviate from the mandatory Guidelines, those very limited circumstances were a far cry from meaningful discretion in most sentences pre-*Booker*, including the defendant's. Moreover, as quoted above, the *Booker* and *Hawkins* decisions noted (and disregarded) that same argument, since the statutes also themselves provided limited exceptions. *Booker*, 543 U.S. at 234; *Hawkins*, 706 F.3d at 822. Still, this court appears to be bound by the Seventh Circuit's decision in *Brierton*. Accordingly, it will deny D'Antoni's petition for this reason, while also granting a certificate of appealability so that the Seventh Circuit may clarify whether *Brierton* precludes vagueness challenges as to the Guidelines residual clause for sentences imposed pre-*Booker*.

## B. Relevance of Application Note 1 to USSG § 4B.1.2(a) to D'Antoni's Career Offender Status

Finally, the government argues that because D'Antoni's conviction for conspiracy to kill a government witness is listed under the Guidelines' commentary offenses related to "crimes of violence," his career offender enhancement was proper. In *United States v. Rollins*, 836 F.3d 737, 741-43 (7th Cir. 2016) (en banc), the Seventh Circuit held that "the list of qualifying crimes in application note 1 to § 4B1.2 is enforceable only as interpretation of the definition of the term 'crime of violence' in the guideline itself." Thus, if the Guideline is invalid, so is the corresponding note. As the court had decided *Hurlburt* that day, it concluded that the application note was invalid.

The government similarly argues that in light of *Beckles*, *Rollins* was wrongly decided and D'Antoni's prior conspiracy conviction should remain a valid predicate offense under the commentary to USSG § 4B1.2. As the decision in *Rollins* relied on its vagueness conclusion in *Hurlburt*, it would appear that the government is correct, and D'Antoni is not entitled to relief.

V.   **Certificate of Appealability**

Under Rule 11 of the Rules Governing Section 2255 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner. To obtain a certificate of appealability the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. ' 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Here, as both parties have presented well-reasoned and thoughtful arguments that deserve consideration on appeal, the court will grant petitioner a certificate of appealability.

ORDER

IT IS ORDERED that petitioner Todd A. D'Antoni's Amended Motion to Vacate (dkt. #5) is DENIED, and a certificate of appealability is GRANTED.

Entered this 17th day of January, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge